## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-SA-01185-SCT

*SELMA P. DAVIS*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/1997 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID WAYNE BARIA |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 11/4/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/29/99 |

## BEFORE PITTMAN, P.J., MILLS AND WALLER, JJ.

## MILLS, JUSTICE, FOR THE COURT:

¶1. This case comes on appeal from the Circuit Court of the First Judicial Circuit of Hinds County, where the lower court affirmed the Board of Trustees of the Public Employees' Retirement System (PERS) decision on August 18, 1997, holding that: 1) There is no dispute that William Davis signed the application for a disability retirement benefit; 2) The application signed by William Davis shows that the maximum monthly benefit option was selected instead of the option providing a spousal death benefit; 3) Following the receipt of the application for a disability retirement benefit, PERS sent William Davis an "awards letter" informing him of the amount the benefit he would receive each month; 4) The law prohibited a change in the benefit option once the first check was cashed; 5) William Davis was provided an estimate of benefits indicating the amount of the benefits payable under each of the options available before making a selection; 6) William Davis received a disability benefit under the maximum monthly option, which he had selected, from January 1, 1989 through June of 1992; 7) Selma Davis is not entitled to posthumously change the option selected by William Davis on his application for a disability benefit; and 8) The PERS decision was based on substantial evidence that was neither arbitrary or capricious. Aggrieved, Mrs. Davis appeals to this Court, assigning as error the following pertinent issue.

### ISSUE

**WHETHER THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM BOARD OF TRUSTEES' DECISION TO DENY SPOUSAL BENEFITS IS SUPPORTED BY CREDIBLE EVIDENCE.**

## FACTS

¶2. William E. Davis, the deceased husband of Selma P. Davis, was an employee of the Mississippi Fair Commission when he became unable to work because of medical problems. Upon the request of the Davis family, an application and estimate of benefits was provided to Mr. Davis by PERS. The letter enclosed with the application and estimate of benefits informed Mr. and Mrs. Davis of a decision they would have to make regarding the benefit options. One option was for Mr. Davis or another beneficiary to receive the maximum monthly benefit allowance only during the remaining life of Mr. Davis. An alternative option was for Mrs. Davis or another beneficiary to receive a reduced monthly allowance during the life of Mr. Davis, in addition to a spousal death benefit remaining for any named beneficiary upon the demise of Mr. Davis. Mrs. Davis acknowledged that the estimate of benefits included a detailed breakdown of the amounts payable under each available option.

¶3. PERS subsequently received the application for disability benefits, and Ms. Johnnie Shook, a PERS analyst, processed the necessary paperwork for the disability benefit selected by Mrs. Davis. Initially, Mr. and Mrs. Davis failed to complete the relevant part of the application, and mailed the application to PERS without making a benefits selection. However, Mrs. Davis did acknowledge that she and her husband had been provided an estimate of benefits, that they were aware of the different options, and that the estimate included the amount of benefit payments under both the maximum option and the reduced monthly option. Mrs. Davis had authority to handle Mr. Davis's business during the relevant period of time, including the authority of making signatures on Mr. Davis's behalf, but the signature on the disability application containing the maximum monthly benefit option is that of Mr. Davis.

¶4. Mr. and Mrs. Davis subsequently visited with Ms. Shook at the PERS office to remedy the incomplete section of the application regarding benefits options. Here lies the main point of confusion and dispute giving rise to this litigation. Mrs. Davis contends that they initially selected the maximum option not providing for spousal death benefits, allowing more available benefit payments for mounting medical expenses, but that they later changed their minds and selected the option which would provide spousal death benefits with a reduced monthly benefit. Mrs. Davis argues that Ms. Shook completed the application in accordance with their instructions in the first instance but then mistakenly forgot to change the benefits section in a manner consistent with their changed selection of spousal death benefits.

¶5. PERS contends that the initial selection of the maximum monthly benefit option was made by Mr. and Mrs. Davis and was not made by Ms. Shook. PERS argues that Shook did not make any modification to the benefits option because a request was never made before the first check was cashed. According to PERS, the relevant benefits portion of the application was completed at the time Ms. Shook received the application, and Mr. and Mrs. Davis did not change their minds because they needed the maximum amount of money available for medical expenses.

¶6. An "awards letter" was then mailed from PERS to Mr. Davis confirming approval of retirement benefits and expressly stating that Mr. Davis had selected the maximum monthly benefit option of $892.67 and not the reduced benefit plan with spousal death benefits. The letter specifically stated that the maximum monthly benefit option had been selected, and that "no changes may be made in selection of option except as provided in Section 25-11-115, Mississippi Code of 1972." Mr. Davis cashed the first check he received based on the maximum monthly benefit option, and the remaining monthly checks were received and cashed by Mr. or Mrs. Davis over a period of approximately forty-one (41) months. Mr. Davis died on May 23,

1992.

¶7. After the death of Mr. Davis, PERS notified Mrs. Davis twice that no other benefits were available under the maximum benefit option selected and advised her that the check mailed the month after her husband's death needed to be returned. Mrs. Davis waited approximately seven (7) months after her husband's death to communicate her position that the maximum monthly benefits option was incorrectly made on the application, and PERS responded by letter repeating its position that the original option selected could not be posthumously modified. PERS subsequently wrote to Mrs. Davis again confirming the fact that no modification or request for modification was made before Mr. Davis cashed the first check, that the option could not be changed according to the PERS law.

¶8. In April of 1993, Mrs. Davis contacted the office of Governor Kirk Fordice to assist her in the acquisition of spousal death benefits. The matter was delegated to the Office of the Inspector General, and a report was issued in February of 1996. The report makes observations regarding specific allegations:

1) The benefits section of the application was completed by Ms. Roby, the PERS analyst.

2) There is nothing in the PERS file of Mr. Davis indicating when, if ever, he received the documents representing benefit calculations made by PERS.

3) The signature of William Davis on the PERS application was notarized 17 days after he actually signed the form, and that material parts of the application were inserted erroneously after Davis signed and in his absence.

4) PERS failed or refused to correct the error once it was discovered or discuss the possible error with Mrs. Davis at the time the first check was received by Davis.

5) The file on Davis was incomplete, in error and fails to support the position expressed by PERS in various correspondence.

6) The medical condition of Mr. Davis and the stressful circumstances surrounding the involvement of Mrs. Davis rendered them unable to fully understand the options available to them or the consequences of their decision.

¶9. While the Inspector General may have had reservations about the procedural actions of PERS in this process, he did not make an unequivocal finding that the evidence upon which this case rests was lacking credibility. He merely suggested that PERS review its file and enter a final administrative decision regarding the Davis claim according to PERS regulations. A final administrative decision unfavorable to Mrs. Davis was rendered in letter from the Executive Director's office. She proceeded to prosecute her appeal before the PERS Claims Committee.

¶10. Upon affirmance of the decision before the Claims Committee, Findings of Fact and Conclusions of Law were submitted to the PERS Board of Trustees. The PERS Board of Trustees entered an Opinion and Order denying the Davis request to posthumously change the option selected by Mr. William Davis in 1988. Mrs. Davis then pursued an appeal in the Circuit Court of the First Judicial District of Hinds County. On August 18, 1997, the circuit court entered an Order affirming the Opinion and Order of the PERS Board of Trustees. Mrs. Davis, being aggrieved by the decision of the circuit court, prosecutes her appeal to this Court.

## DISCUSSION

### WHETHER THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM BOARD OF TRUSTEES' DECISION TO DENY SPOUSAL BENEFITS IS SUPPORTED BY CREDIBLE EVIDENCE.

¶11. Where an employee has instituted an appeal of a final agency decision to the proper circuit court, the scope of the this Court's review of the circuit court shall be limited to a review of the record made before the agency or hearing officer to determine if the action is unlawful for the reason that it was: a) Not supported by substantial evidence; b) Arbitrary or capricious; or c) In violation of some statutory or constitutional right of the employee. *Young v. Mississippi State Tax Comm'n*, 635 So. 2d 869, 874 (Miss.1994) (citing *Bertucci v. Mississippi Dep't of Corrections*, 597 So. 2d 643 (Miss.1992)).

¶12. The standard of review for this Court from an administrative decision of an agency or board is also set forth in Rule 5.03 of the Uniform Circuit and County Court Rules. The scope of review is limited to whether the final PERS determination was: 1) Supported by substantial evidence; or 2) Arbitrary or capricious; or 3) Beyond the powers of the Board to make; or 4) Violated a statutory or constitutional right. *Brinston v. Public Employees' Retirement Sys.*, 706 So. 2d 258, 259 (Miss.1998); *Sprouse v. Mississippi Employment Sec. Comm'n*, 639 So. 2d 901 (Miss.1984). This Court may not substitute its own judgment for that of the agency which rendered the decision, nor may we re-weigh the facts of the case. *Id*. at 259 (citing *Mainstream Sav. & Loan Ass'n v. Washington Federal Sav. & Loan Ass'n*, 325 So. 2d 902 (Miss.1976)). A rebuttable presumption exists in favor of PERS's decision, and the employee seeking the benefit, Mrs. Davis, is left with the burden of proving the contrary. *Brinston*, at 260 (citing *Mississippi Comm'n on Envt'l Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211 1215 (Miss.1993)).

¶13. Should the record and proceedings below reflect a decision wholly unsupported by any credible evidence, we would regard that decision as contrary to law and subject to modification or reversal. *Chandler v. City of Jackson Civil Serv. Comm'n*, 687 So. 2d 142, 144 (Miss.1997) (citing *Gill v. Mississippi Dep't of Wildlife Conservation*, 574 So. 2d 586, 591 (Miss.1990)). We are thus in our familiar position of judicial review of administrative processes wherein we may interfere only where the board or agency's decision is arbitrary and capricious, accepting in principle the notion that a decision unsupported by any evidence is by definition arbitrary and capricious. *Id*. But such instances are rare, because this Court has stated:

> Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency.

*Mississippi State Tax Comm'n v. Mississippi - Alabama State Fair*, 222 So. 2d 664, 665 (Miss.1969).

¶14. Miss. Code Ann. Section 25-11-115(2) (1972) provides in pertinent part:

(2) No change in the option selected shall be permitted after the member's death or after the member has received his first retirement check except as provided in Section 25-11-127...

¶15. In light of pertinent case law and statutory authority viewed in connection with the specific facts of this case, PERS and the circuit court below made the correct determination in denying the benefits. The circuit court concluded:

1) The Board of Trustees of the Public Employees' Retirement System, by unanimous vote, entered its Opinion and Order in this action on December 17, 1996, denying the request of Mrs. Davis to posthumously change the option selected by her deceased husband on his application for disability retirement benefits.

2) Mrs. Davis argued that Mr. Davis did not select the disability retirement benefit option that is shown on his application and that PERS decision was based primarily on an consideration of an affidavit that was improperly submitted and considered. However, there is no dispute that Mr. Davis signed the application, and even without deciding whether the aforesaid affidavit was improperly considered, the record in this action contains other substantial evidence to support PERS' decision.

3) The application for disability benefits that Mr. Davis signed and submitted to PERS shows he selected a maximum monthly benefit option instead of the option of a reduced monthly benefit with an additional spousal death benefit.

4) After Mr. Davis submitted his application to PERS, PERS responded with an "awards letter" that specified the amount of money Mr. Davis would receive each month and the fact that the law under which PERS is governed precludes a change in the option selected by Mr. Davis after his death or after the first benefit check is cashed.

5) Prior to Mr. Davis selecting a disability benefit option, PERS provided to Mr. and Mrs. Davis an estimate of benefits which specified the amounts that would be paid under the various available options

6) From January 1, 1989, through June, 1992, Mr. Davis received monthly disability retirement benefits in the amount payable under the option for maximum benefits that he selected.

7) Now, after Mr. Davis has died, Mrs. Davis wants to posthumously change the original option selected by Mr. Davis on his application for disability retirement benefits.

¶16. Regarding the first finding, it is clear that the circuit court considered all of the procedures, hearings and arguments which occurred before the PERS Board of Trustees made a final decision denying Mrs. Davis a posthumous disability modification. The record indicates that these considerations were not taken lightly by PERS, as a comprehensive review of the entire saga was made by the Inspector General of Mississippi. The Legislative intention behind Section 25-11-115(2) is that a choice regarding disability retirement benefits is a very important decision not to be taken as a mere afterthought by any state employee, regardless of whether they are young or old, in good health or bad. An employee must take into consideration the present and future financial needs of themselves and their dependants, and can not change his or her decision in mid-stream to maximize benefits. By the same token, this Court does not take lightly the final administrative decision of a state agency. The scope of review is limited to the record made before the agency in determining whether the action was unlawful because of unsubstantial evidence, an arbitrary or

capricious decision, or a violation of some statutory or constitutional right. *Young*, 635 So. 2d at 874. A rebuttable presumption in favor of the benefit denial arose in favor of PERS after the final determination, placing the burden squarely on the shoulders of Mrs. Davis to overcome. *Brinston*, 706 So. 2d at 260.

¶17. The second conclusion by the circuit court addresses the contention of Mrs. Davis that her husband did not select the maximum monthly benefit option and that the PERS decision was improperly based on an affidavit that was subsequently impeached. The decisions made by the PERS Claims Committee and Board of Trustees were administrative actions, and as such, were not bound by strict adherence to rules of evidence, absent extraordinary circumstances. *New South Communications, Inc. v. Answer Iowa, Inc.*, 490 So. 2d 1225, 1227 (Miss.1986). While the right of cross examination is a hallmark of American jurisprudence, and the affiant, Ms. Shook was not present, cross examination is not an absolute right carved in stone for administrative cases. *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063 (5th Cir. 1982). Additionally, the circuit court found that the record in this action contains other substantial evidence supporting the PERS Board of Trustees decision.

¶18. The third finding of the circuit court is that Mr. Davis selected the maximum monthly benefit option instead of a reduced monthly benefit with an additional spousal death benefit. This is an issue that was considered by the administrative Claims Committee of PERS and the Inspector General, reconsidered by the PERS Board of Trustees, and affirmed after even further consideration of the Trial Court. The procedural actions and substantive decisions of PERS in this case were an administrative requirement of law. *Mississippi State Tax Comm'n*, 222 So. 2d at 665. When PERS made the final administrative decision, Mrs. Davis exercised her right to appeal, but that right is limited by the unwillingness and impropriety of courts to enter the field of the administrative agencies, reflecting the general doctrine of separation of powers between the executive and judicial branches of state government. *Id*. Judicial deference for valid administrative decisions based on reasonable considerations, not necessarily perfection, arises from the realistic limitations of our court system in reviewing every minute detail in the executive branch of state government.

¶19. The fourth conclusion drawn by the circuit court is that after Mr. Davis submitted his application to PERS, PERS responded with an "awards letter" specifying the amount of money Mr. Davis would receive each month, along with the recognition that the law under which PERS is governed precludes a change in the option selected by Mr. Davis after his death or after the first benefit check is cashed. Mrs. Davis properly asserts that the appeal process from the final PERS decision is governed by Miss. Code Ann. § 25-11-120(2)(1999), which states in relevant part:

> (2) Any individual aggrieved by the determination of the board may appeal to the Circuit Court of the First Judicial District of Hinds County, Mississippi, in accordance with the Uniform Circuit Court Rules governing appeals to the circuit court in civil cases. Such appeal shall be made solely on the record before the board and this procedure shall be the exclusive method of appealing determinations of the board.

¶20. Application of the standard of review set forth in Rule 5.03 of the Uniform Circuit and County Court Rules limits the scope of judicial review to the question of whether the final PERS benefit decision was supported by substantial evidence, arbitrary or capricious, or in violation of some statutory or constitutional right of the employee. *Brinston*, 706 So. 2d at 259. Considering the totality of the record below, both in the administrative hearings of PERS and in the circuit court, the decision denying modification of the

maximum monthly benefit option is clearly supported by credible evidence and thus not contrary to law or subject to modification or reversal. Our familiar position of judicial review for administrative decisions is that we may interfere only when the decision is arbitrary or capricious, leaving a very heavy burden for Mrs. Davis to carry. *Chandler*, 687 So. 2d at 591.

¶21. The remainder of the circuit court findings show that PERS gave notice of benefits to Mr. and Mrs. Davis before an option was selected; that Mr. and Mrs. Davis received the maximum monthly benefit checks over a period spanning well over three years before Mr. Davis died; and that Mrs. Davis wants to make a posthumous change of the maximum benefits option selected by Mr. Davis on his application. Mrs. Davis contends that she and her husband never received the estimate of benefits under the various options, but there is no dispute that Mr. Davis wanted the maximum monthly benefit and signed the benefit application. There is no dispute that the maximum monthly benefit checks were received and cashed for a substantial period of time. The only indication from the record that Mr. and Mrs. Davis had changed their selection from the maximum monthly benefit to a spousal death benefit before cashing the first benefit check was a "nod of the head" by Mr. Davis. The importance of the benefit decision was well recognized by Mr. and Mrs. Davis.

¶22. Section 25-11-115(2) clearly states that the opportunity to modify a benefits selection is waived after the member's death or after the first benefit check is cashed, reflecting the gravity and heavy weight of such a choice. There is a rebuttable presumption in favor of the action of an administrative agency, and the burden of proof is upon the one challenging its action. *Ricks v. Mississippi State Dep't of Health*, 719 So. 2d 173 (Miss.1998); *Mississippi Dep't of Envt'l Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss.1993). Since the record shows that the only indication Mr. Davis made was a supposed "nodding" of his head, the application of the facts to authoritative law results in there being an insufficient showing on the part of Mrs. Davis in overcoming the presumption that their wishes were followed.

¶23. The United States Constitution and the Mississippi Constitution guarantee the right to due process of law before an administrative agency. U.S. Const. amend. XIV; Miss. Const. Art. 3, Section 14. But there is a distinction between due process of law and administrative findings of fact, the latter of which is not required to conform to the strict rules of evidence absent extraordinary circumstances. *New South Communications v. Answer Iowa, Inc.*, 490 So. 2d 1225, 1227 (Miss.1986). As long as administrative proceedings are conducted in a fair and impartial manner, free from any just suspicion, prejudice, unfairness, fraud or oppression, the findings of fact should not be disturbed. *Mississippi State Bd. of Health v. Johnson*, 197 Miss. 417, 19 So. 2d 445, 447 (1944). The record indicates that there was no dispute between the parties involving the procedure of the PERS hearings, but Mr. and Mrs. Davis were in disagreement with the findings of fact. The circuit court below considered the entire record, both procedurally and factually, determining that the PERS findings were supported by substantial evidence.

¶24. Substantial evidence affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Delta CMI v. Speck*, 586 So. 2d 768 (Miss.1991). And when applied with the relevant statutes of Miss. Code. Ann. Sections 25-11-115(2) and 25-11-120(2), the resulting outcome is that there was a rational, substantial basis for the circuit court to hold that Mr. and Mrs. Davis knew the maximum monthly benefit selection created a substantial risk on the remaining life of Mr. Davis. The potential future benefits enjoyed by Mr. Davis were directly proportional to his remaining life span.

¶25. When called upon to apply statutes to specific factual situations, we apply the statutes literally according to their plain meaning, and there is no occasion to resort to rules of statutory interpretation where the language used by the legislature is plain, unambiguous and conveys a clear and definite meaning. *Chandler v. City of Jackson Civil Serv.*, 687 So. 2d 142, 144 (1997) (citing *Jones v. Mississippi Employment Sec. Comm'n*, 648 So. 2d 1138, 1142 (Miss.1995); *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss.1994); *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss.1992); *Forman v. Carter*, 269 So. 2d 865, 868 (Miss.1972)). This Court attempts to give a statute the meaning which best reflects the legislative language and is most consistent with the best statement of policies and principles justifying that language. *Id*. at 144. The plain meaning of Section 25-11-115(2) prohibits a change in the benefits option selected after the death of Mr. Davis or after Mr. Davis received and cashed the first benefits check under the maximum option. In the case *sub judice*, both of these events happened prior to the modification request of Mrs. Davis.

¶26. These findings of fact originating in the PERS hearing process and were affirmed in the circuit court because they were not arbitrary or capricious and were supported by substantial evidence. "Substantial evidence", like other popular words in statutes, must be accepted in their popular sense and we must attempt to glean from the statutes the legislative intent. *Chandler*, 687 So. 2d at 144 (citing *Mississippi Power Co. v. Jones*, 369 So. 2d 1381, 1388 (Miss.1979); *Dennis v. Travelers Ins. Company*, 234 So. 2d 624, 626 (Miss.1970); *Mississippi State Tax Comm'n v. Hinton*, 218 So. 2d 740, 742 (Miss.1969)).

## CONCLUSION

¶27. The record before this Court establishes that Mr. and Mrs. Davis, when applying for disability retirement benefits, made a choice for the maximum monthly benefit option available. This decision precluded the spousal death benefit, which was available as an alternative option up until the time that the first check was cashed or Mr. Davis died, either of which would have waived the modification opportunity. The Board of Trustees for the Public Employees' Retirement System made a final administrative decision regarding the allegations set forth by Mrs. Davis and denied her request for a posthumous modification of the spousal death benefit option. The decision was properly affirmed by the circuit court after considering the record and the law governing PERS. Accordingly, the judgment of the Hinds County Circuit Court is affirmed.

¶28. **AFFIRMED.**

**PRATHER, C.J., SULLLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**